JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

TULLIO L. DELIBERALI

**DEFENDANTS**

OWENS-ILLINOIS, INC.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert Paul
Paul Reich Myers PC
1608 Walnut Street, Suite 500
Philadelphia, PA 19103  (215-735-9200)

Attorneys *(If Known)*
Chad D. Mountain
Maron Marvel Bradley Anderson & Tardy LLC
Three Logan Square
1717 Arch Street
Suite 3710
Philadelphia, PA 19103 (215-231-7100)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
     Plaintiff
- ☒ 3  Federal Question
     *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government
     Defendant
- ☐ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☒ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original
     Proceeding
- ☒ 2 Removed from
     State Court
- ☐ 3 Remanded from
     Appellate Court
- ☐ 4 Reinstated or
     Reopened
- ☐ 5 Transferred from
     Another District
     *(specify)*
- ☐ 6 Multidistrict
     Litigation -
     Transfer
- ☐ 8 Multidistrict
     Litigation -
     Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: _____

Brief description of cause: _____

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE  Eduardo Roberano

DOCKET NUMBER  MDL 875

DATE  6/25/18

SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Tullio L. Deliberali, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| A.W. Chesterton, Inc., et al. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          (X)

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )

| | | |
|---|---|---|
| _6/25/18_ | _[signature]_ | Owens-Illinois, Inc. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-231-7100 | 215-231-7101 | CMountain@maronmarvel.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 262 Knoll Drive, Blackwood, New Jersey 08012 _____

Address of Defendant: _____ One Michael Owens Way, Perrysburg, OH 43551 _____

Place of Accident, Incident or Transaction: _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ MDL 875 _____     Judge: _____ Eduardo Robreno _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____ 6/25/18 _____     _____ [signature] _____     _____ 86908 _____
                                    *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

**A.**  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
       *(Please specify): _____*

**B.**  *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify): _____*
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
       *(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Chad P. North _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____ 6/25/18 _____     _____ [signature] _____     _____ 86908 _____
                                    *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____262 Knoll Drive, Blackwood, New Jersey 08012_____

Address of Defendant: _____One Michael Owens Way, Perrysburg, OH 43551_____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: ____MDL 875____  Judge: ____Eduardo Robreno____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___6/25/18___   _____   ___86908___
            *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
       *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: ___6/25/18___   _____   ___86908___
            *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| TULLIO L. DELIBERALI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | |
| | : | |
| ALLEN-BRADLEY COMPANY() | : | Asbestos Case |
| CT Corporation Systems | : | |
| 8020 Excelsior Drive | : | |
| Suite 200 | : | |
| MADISON, WI USA 53717 | | |

AMTICO()
Division of American Biltrite
57 River Street
WELLSLEY HILLS, MA 02181

AURORA PUMP ()
c/o Lynette Jones
13515 Ballantyne Corporate Place
CHARLOTTE, NC 28277

Armstrong International O
2081 Southeast Ocean Blvd.
4th Floor
STUART, FL 34996

BAYER    CROPSCIENCE    INC.,    as
successor to (229)
Amchem Products, Inc.
2TW Alexander Drive
RESEARCH    TRIANGLE    PARK,    NC
27709

BEAZER EAST (f/k/a Koppers) (440)
c/o Three Rivers Management
Manor Oak One, Suite 200
1910 Cochrane Road
PITTSBURGH, PA 15220

BF GOODRICH COMPANY ()
2730 W. Tyvola Road
CHARLOTTE, NC 28217-4543

BLACKMER PUMPS 0
1809 Century Avenue SW
GRAND RAPIDS, MI 49503

BUFFALO PUMPS, INC. ()
874 Oliver Street
NORTH TONAWANDA, NY 14120

BW/IP Inc. ()
c/o FLOW SERVICE CORPORATION
5215 N. O'Connor Blvd, Suite 2300
IRVING, TX 75039

CARRIER CORPORATION()
1 Carrier Place
FARMINGTON, CT 06034

CBS Corporation, formerly Westinghouse
Electric Corporation ()
c/o Prentice Hall
80 State Street
ALBANY, NY 12207

CLARK CONTROLLER CO. (396)
c/o GTE Products of Connecticut
Corporation
600 Hidden Ridge
IRVING, TX 75038

CLEAVER-BROOKS, INC. (155)
A Division of Aqua-Chem, Inc.
3707 North Richards
PO Box 421
MILWAUKEE, WI 53201

COONEY BROTHERS ( 178)
1850 North Gravers Road
#100

PLYMOUTH MEETING, PA 19462
COPES VULCAN ()
5620 West Road
MCKEAN, PA 16426

CRANE CO. (11752)
100 First Stamford Place
STAMFORD, CT 06902

DURO-DYNE()
81 Spence Street
BAY SHORE, NY 11706

FOSTER WHEELER, LLC (131)
PO Box 4000
CLINTON, NJ 08809

GENERAL ELECTRJC COMPANY (064)
c/o CT Corporation Systems
600 North 2nd Street
Suite 401
HARRISBURG, PA 17101

GOODYEAR TIRE AND RUBBER CO. ()
CORPORATION SERVICE CO.
2711 Centerville Road, Suite 400
WILMINGTON, DE 19808

GOULD ELECTRONICS, INC. ()
34929 Curtis Boulevard
EASTLAKE, OH 44095

GOULDS PUMPS INC. ()
270 Fall Street
SENECA FALLS, NY 13148

GREENE, TWEED & CO., INC. (132)
c/o Greene, Tweed NC, LLC
227 West Trade Street
Suite 2170
CHARLOTIE, NC 28202

GRINELL CORPORATION (191)
f/k/a ITT GRINELL
c/o CT Corporation Systems
600 Norbi. 2nd Street, Suite 401
HARRISBURG, PA 17101

HOMASOTE()
932 Lower Ferry Road
TRENTON, NJ 08628

IMO INDUSTRIES, INC. 0
f/k/a De Laval Steam Turbine Company
The Corporation Trust Company
1209 Orange Street
WILMINGTON, DE 19801

2

INGERSOLL-RAND & CO. ()
Corporate Center
One Centennial Avenue
PISCATAWAY, NJ 08854

J.A. SEXAUER ()
570 Taxter Road
Suite 230
ELMSFORD, NY 10523

J.J. WHITE, INC. ()
5500 Bingham Street
PHILADELPHIA, PA 19l20

JOHN CRANE, INC. (093)
6400 Oakton Road
MORTON GROVE, IL 60053

METRO POLIT AN LIFE INSURANCE
CO. ()
200 Park Avenue
Room 3200
NEW YORK, NY 10166

MINNESOTA       MINING       AND
MANUFACTURING()
3M Center
ST. PAUL, MN 55144

OWENS~ILLINOIS, INC. (032)
Legal Department, Plaza One
c/o Mona Huffinan
One Michael Owens Way
PERRYSBURG, OH 43551

SELBY BATTERSBY AND COMPANY
(5786)
n/k/a SB DECKING, INC.
c/o Alan R. Gries, Esq.
GIBBONS, P.C.
One Logan Square
130 N. 18th Street, Suite 1210
Philadelphia, PA 19103

SQUARED COMPANY (4399)
200 N. Martingale Road
Suite 100
SCHAUMBURG, IL 60173

3

VIAD CORPORATION ()
f/k/a Dial Corp.
1850 N Central Ave, Ste 1900
PHOENIX, AZ 85004

WARREN PUMPS LLC ()
Corporation Trust Center
1209 Orange Street
WILMINGTON, DE l 9801

WEIL McLAIN, A Division of The Marley
Company. A Wholly Owned Subsidiary of
United Dominion Industries, Inc. (163)
500 Blaine Street
MICHIGAN CITY, IN 46360

Defendants.

## NOTICE OF REMOVAL

Owens-Illinois, Inc. ("Owens-Illinois") has removed this action from the Philadelphia

Court of Common Pleas to the United States District Court for Eastern District of Pennsylvania.

Based on the following facts and declarations, removal is appropriate under 28 U.S.C. §§ 1331,

1367, 1441, 1442, and 1446:

### A.    PRELIMINARY STATEMENT

1.    On May 23, 2018, Plaintiffs commenced this action by filing a complaint against

Owens-Illinois and others in Philadelphia Court of Common Pleas.  In their complaint, Plaintiffs

allege that Mr. Deliberali was injured as a result of his exposure to asbestos while working at the

Philadelphia Naval Shipyard.  See Plaintiff's Complaint, a copy of which is attached as Exhibit

"A," ¶ 6.

2.    Owens-Illinois has a federal right to remove this action to federal court because

Mr. Deliberali's claimed exposure to asbestos from Owens-Illinois gives rise to colorable federal

defenses of the government contractor defense under *Boyle v. United Technologies Corp.*, 487

U.S. 500 (1988), derivative immunity under *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18

(1940), and the combatant activities exception under the Federal Tort Claims Act, 28 U.S.C. §

2680(a).   Indeed, federal courts have recognized Owens-Illinois' colorable federal defenses

against similar asbestos claims:

> With respect to the "government contractor" defense, I conclude
> that there is sufficient evidence to allow the defense to go to a jury.
> There are military specifications in evidence, there's evidence of
> testing of the product required by the government, and there's
> evidence that the product cannot get onto the QPL [Qualified
> Products List] without having met the required specifications.
> ....
> So I conclude that, consistent with *Ruppel* [*v. CBS Corp.*, 701 F.3d
> 1176 (7th Cir. 2012)], all of the theories that the plaintiff here is
> mounting against Owens-Illinois could be subject to a
> "government contractor" defense.

*Krik v. Owens-Illinois, Inc.*, No. 10-cv-7435, ECF No. 387, at 1506:7-1507:9 (N.D. Ill. Apr. 29,

2015), *available at* https://ecf.ilnd.uscourts.gov/doc1/067115768594, *aff'd*, *Krik v. Exxon Mobil*

*Corp.*, 870 F.3d 669 (7th Cir. 2017); *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831,

839 (2d Cir. 1992) (holding that Owens-Illinois and others, as "government contractors

providing asbestos insulation products in accordance with detailed government specifications,

could not be held liable for the design of their products").

3.     Between 1948 and April 30, 1958, Owens-Illinois manufactured and sold

commercial quantities of an asbestos-containing thermal insulation, called Kaylo, for use in the

United States Navy.  As a government contractor and before the commercial manufacture and

sale of Kaylo, Owens-Illinois designed and conformed Kaylo—including its asbestos content—

to the United States Navy's precise specifications.  The United States Navy's certificate for

approval of Kaylo made clear that its approval covered all characteristics inherent in Kaylo and was based upon strict accordance with the specifications.

###    B.    SUMMARY OF THE FACTS

4.    Beginning in the 1940s, the United States Navy exercised its discretion and approved precise specifications for thermal block insulation in United States Navy Specification 32-I-3 (later MIL-I-2819) and thermal pipe insulation in United States Navy Specification 32-P-8 (later MIL-I-2781).  These specifications required thermal pipe and block insulation to conform in all respects to the composition approved by the United States Navy.  These specifications also detailed the material, workmanship, dimensions, tensile strength, packaging, marking, and many other aspects of thermal pipe and block insulation.

5.    The United States Navy also exercised its discretion and approved precise specifications for packaging and marking products supplied for use in the United States Navy. According to MIL-STD-129, these specifications were intended to be uniform and mandatory, and the United States Navy made clear that:

> **Unauthorized markings**. No markings shall be placed on any containers other than those specified in this standard or authorized by the cognizant activity concerned, or those required by regulation or statute.

MIL-STD-129 required some warnings on some products and required no warnings about asbestos on thermal pipe and block insulation until after the time that Owens-Illinois supplied Kaylo for use in the United States Navy.

6.    Based on the United States Navy's precise specifications, Owens-Illinois designed and conformed Kaylo thermal insulation for use in the United States Navy.

7.    In 1942, before the commercial manufacture and sale of Kaylo, Owens-Illinois made test pieces of Kaylo and had them tested under the United States Navy's precise

specifications at the federally funded Experiment Station at Purdue University. These test pieces of Kaylo passed all points for the Class A thermal insulation specifications, for use up to 500° F, and the Class B thermal insulation specifications, for use up to 1000° F, in the United States Navy.

8.     In 1943, before the commercial manufacture and sale of Kaylo, the United States Navy requested that Owens-Illinois furnish a test sample of Kaylo to the United States Naval Engineering Experiment Station and submit Kaylo for approval under the United States Navy's precise specifications. Owens-Illinois then met with the United States Navy at its request and submitted a test sample of Kaylo to the United States Naval Engineering Experiment Station.

9.     In 1944, before the commercial manufacture and sale of Kaylo, the United States Navy recommended that the War Production Board approve at Owens-Illinois construction of a new building and installation of production equipment for manufacturing Kaylo. The United States Navy reported that the construction was essential under the Directive for War-Time Construction issued by the War Production Board.

10.    In 1944, before the commercial manufacture and sale of Kaylo, the United States Naval Engineering Experiment Station performed experiments and tests on Kaylo under the United States Navy's precise specifications. The United States Naval Engineering Experiment Station found that Kaylo complied with Class A thermal insulation specifications, for use up to 500° F, and Class B thermal insulation specifications, for use up to 1000° F, in the United States Navy.

11.    On January 12, 1944, before the commercial manufacture and sale of Kaylo, the United States Navy certified Owens-Illinois Kaylo block insulation—including its asbestos content—as approved under the United States Navy's precise specifications and registered it

among thermal block insulation qualified for Navy use.  The certificate of approval covered all characteristics inherent in Owens-Illinois Kaylo and stated that:

> **NAVY SPECIFICATIONS**
>
> This approval is based upon material in strict accordance with the governing Navy Department specification, and nothing in connection with this approval shall be construed as a waiver of any part of the governing specifications.

12.     On May 29, 1944, before the commercial manufacture and sale of Kaylo, the United States Navy certified Owens-Illinois Kaylo pipe insulation—including its asbestos content—as approved under the United States Navy's precise specifications and registered it among thermal pipe insulation qualified for Navy use.  The certificate of approval covered all characteristics inherent in Owens-Illinois Kaylo and stated that:

> **NAVY SPECIFICATIONS**
>
> This approval is based upon material in strict accordance with the governing Navy Department specification, and nothing in connection with this approval shall be construed as a waiver of any part of the governing specifications.

13.     In 1948, before the commercial manufacture and sale of Kaylo, the United States Navy requested that Owens-Illinois supply Kaylo for use in the United States Navy.  Owens-Illinois declined the request because it was selling only a few small orders of Kaylo for the United States Navy and could not supply large quantities of Kaylo from its pilot plant.

14.     In 1948, before the commercial manufacture and sale of Kaylo, the United States Navy reported that its need for Kaylo had become extremely critical.

15.     Owens-Illinois then began manufacturing commercial quantities of asbestos-containing Kaylo thermal insulation in 1948 and ceased the manufacture and sale of Kaylo thermal insulation on April 30, 1958, when it sold the Kaylo division to a separate company, Owens Corning Fiberglas Corp.

16.     During the time that Owens-Illinois supplied Kaylo for use in the United States Navy, the United States Navy sampled, inspected, and tested Kaylo for conformance with the United States Navy's precise specifications and certificates of approval. These tests required Kaylo to conform in all respects to the composition—including its asbestos content—approved by United States Navy.  The Office of Inspector of Naval Material also held shipments of Kaylo for conformance with the United States Navy's precise specifications.

17.     During the time that Owens-Illinois supplied Kaylo for use in the United States Navy, asbestos was a component part of Kaylo because the United States Navy's precise specifications in the relevant temperature range could not be met without asbestos. Owens-Illinois experimented with various substitutes for asbestos due to the high cost (asbestos was the most expensive raw ingredient) and scarcity, but none of the substitutes met all of the United States Navy's precise specifications.  Only asbestos yielded the necessary degree of strength, bonding, hardness, low density, and heat conductivity to satisfy the United States Navy's precise specifications; indeed, only high temperature insulation products that contained asbestos were approved under the United States Navy's precise specification during this timeframe.

18.     During the time that Owens-Illinois supplied Kaylo for use in the United States Navy, the United States Navy registered Owens-Illinois Kaylo on the United States Navy's Qualified Products List ("QPL").  The United States Navy removed Owens-Illinois Kaylo from the United States Navy's QPL after Owens-Illinois ceased the manufacture and sale of Kaylo on April 30, 1958.

19.     During the time that Owens-Illinois supplied Kaylo for use in the United States Navy, the United States Navy was aware of the known hazards associated with exposure to asbestos.  Owens-Illinois was not aware of any danger from the use of Kaylo that it knew and

9

that the United States Government did not know.  Owens-Illinois complied with the United States Navy's precise specifications and certificates of approval by supplying Kaylo without a warning about asbestos for use in the United States Navy.

### C.    PROCEDURAL COMPLIANCE

20.    Plaintiffs had their complaint served upon Owens-Illinois on May 29, 2018, and Owens-Illinois has removed this action within 30 days of being served with the complaint and summons.  Therefore, removal is timely.  28 U.S.C. § 1446(b)(1), (3).

21.    Attached to this notice of removal is a copy of all process, pleadings and orders served upon Owens-Illinois in this action.  28 U.S.C. § 1446(a).

22.    Promptly after this filing, Owens-Illinois will give written notice of this notice of removal to all adverse parties and will file a copy of this notice of removal with the Philadelphia County Prothonotary.  28 U.S.C. § 1446(d).

### D.    VENUE

23.    This venue is proper because Plaintiff's alleged injuries occurred in Philadelphia, Pennsylvania.  28 U.S.C. §§ 1441(a).

### E.    FEDERAL OFFICER JURISDICTION

24.    This Court's jurisdiction is established by 28 U.S.C. § 1442(a)(1) because Owens-Illinois is a federal officer entitled to removal jurisdiction.  This statute "enables the defendant to have the validity of his immunity defense adjudicated, in a federal forum."  *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).  Indeed, "the right of removal is absolute for conduct performed under color of federal office."  *Id.* at 242 (citing *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969)).

25.     As shown in this notice, Owens-Illinois (a) is a "person" within the meaning of the statute, (b) acted under the direction of a federal officer, (c) has demonstrated a causal nexus between the Plaintiffs' claims and the acts it allegedly performed under color of federal office, and (d) has raised a colorable federal defense to the Plaintiffs' claims. *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989).

**I.      Owens-Illinois is a person under Section 1442(a)(1).**

26.     As a corporation, Owens-Illinois is a "person" within the meaning of the federal officer removal statute. 28 U.S.C. § 1442(a)(1); 1 U.S.C. § 1.

**II.     Owens-Illinois acted under the direction of federal officers.**

27.     Owens-Illinois' supply of asbestos-containing thermal insulation to the United States Navy was carried out under the direction and supervision of the United States Navy for the purpose of assisting the United States government in carrying out its duties. *Tennessee v. Davis*, 100 U.S. 257, 263 (1880) (government "can act only through its officers and agents"); *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151-52 (2007) (a person "acts under" a federal officer if its activities "involve an effort to assist, or to help carry out, the duties or tasks of the federal superior"); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136-37 (2d Cir. 2008) (a person "acts under" a federal officer if it produces products "that, in the absence of Defendants, the Government would have had to produce itself").

**III.    Plaintiffs' claims relate to Owens-Illinois' role as a government contractor.**

28.     Assuming the truth of Plaintiffs' allegations (which are contested), there is a causal nexus between Plaintiffs' alleged injuries and Owens-Illinois' alleged conduct as a federal officer.

29.     The nexus exists because the alleged acts forming the basis of Plaintiffs' claims—Owens-Illinois' supply of asbestos-containing thermal insulation to the United States Navy—was performed at the request of, and under close supervision and control by, the United States Navy. *Isaacson*, 517 F.3d at 137 (a causal nexus exists when a defendant is sued "*because of* what they were asked to do by the Government" (emphasis added)).

## IV.     Owens-Illinois has colorable federal defenses.

30.     Owens-Illinois has colorable federal defenses of the government contractor defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), derivative immunity under *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940), and the combatant activities exception under the Federal Tort Claims Act, 28 U.S.C. § 2680(a).

31.     First, Owens-Illinois has a colorable federal government contractor defense because:

  a.  the United States Navy exercised its discretion and approved reasonably precise specifications for Owens-Illinois Kaylo supplied to the United States Navy;

  b.  the Owens-Illinois Kaylo product and packaging conformed to those specifications; and

  c.  the United States Navy knew of any dangers in the use of Owens-Illinois Kaylo that were known to Owens-Illinois, and Owens-Illinois thus provided any warning (none) about any dangers in the use of Kaylo that were known to Owens-Illinois but not to the United States

*Boyle*, 487 U.S. at 512.

32.     Second, Owens-Illinois has a colorable federal derivative immunity defense because Owens-Illinois, a government contractor performing at the direction and authorization of

the United States Navy, is immune from suit for any claim based upon performance of the work. *Yearsley*, 309 U.S. at 20-21; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016), as revised (Feb. 9, 2016) ("Where the Government's 'authority to carry out the project was validly conferred, … 'there is no liability on the part of the contractor' who simply performed as the Government directed." (quoting *Yearsley*, 309 U.S. at 20-21)).

33.     Third, Owens-Illinois has a colorable federal defense under the combatant activities exception of the Federal Tort Claims Act because (a) activities giving rise to Plaintiffs' claims arose during time of war and (b) Owens-Illinois' actions during the period were combatant activities within the meaning of the statute.  28 U.S.C. § 2680(a); *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009) ("a tort claim arising out of the contractor's engagement in such activities shall be preempted"); *Johnson v. United States*, 170 F.2d 767, 769 (9th Cir. 1948) ("Aiding others to swing the sword of battle is certainly a 'combatant activity'").

## V.     Any disclaimer of jurisdiction is invalid.

34.     Any attempt to disclaim federal jurisdiction is not effective.  "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham*, 395 U.S. at 407.

35.     Plaintiffs' allegations against Owens-Illinois arise from Mr. Deliberali's alleged exposure to asbestos from asbestos-containing thermal insulation that Owens-Illinois supplied to the United States Navy.

36.     Because Plaintiffs' claims relate to Owens-Illinois' work as a military contractor, any disclaimer cannot overcome Owens-Illinois' absolute right to have its federal defenses

adjudicated by a federal court. *Willingham*, 395 U.S. at 406–07 ("Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of the federal forum."); *Manypenny*, 451 U.S. at 242 ("[T]he right of removal is absolute for conduct performed under color of federal office ….").

F.     **ADMIRALTY JURISDICTION**

37.     Plaintiffs' claims give rise to admiralty jurisdiction under 28 U.S.C. §§ 1333 and 1441. The locality test is satisfied because Plaintiffs' Complaint alleges exposure to asbestos from Owens-Illinois asbestos-containing thermal insulation occurred while Mr. Deliberali's served aboard United States Navy vessels on navigable waters. The connection test is satisfied because this type of claim has a potentially disruptive impact on maritime commerce, and the general character of the activities giving rise to this claim has a substantial relationship to traditional maritime activity. *See Lu Junhong v. Boeing Co.*, 792 F.3d 805, 813-18 (7th Cir. 2015).

G.     **SUPPLEMENTAL JURISDICTION**

38.     Plaintiffs' remaining claims are so related to their claim arising out of Mr. Deliberali's work that those remaining claims form part of the same case or controversy under Article III of the United States Constitution. Thus, pursuant to 28 U.S.C. § 1367(a) and § 1441, this Court has supplemental jurisdiction over Plaintiffs' remaining claims.

H.     **CONCLUSION**

For these reasons, Owens-Illinois has removed this action from the Philadelphia Court of Common Pleas to the United States District Court for Eastern District of Pennsylvania. Should

Plaintiffs move to remand this case, Owens-Illinois will respond more fully in writing, including if necessary, the submission of additional affidavits and authority.   Owens-Illinois further reserves all of its defenses.

Respectfully submitted,

**MARON MARVEL BRADLEY**
**ANDERSON & TARDY, LLC**

By: _____

Chad D. Mountain, Esquire

Date:  June 25, 2018

Attorney I.D. No. 86908
1717 Arch Street
Suite 3710
Philadelphia, PA  19103
cmountain@maronmarvel.com

Counsel for Defendant Owens-Illinois, Inc.

15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TULLIO L. DELIBERALI, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | |
| A.W. CHESTERTON, INC., et al. | : | |
| Defendants. | : | |

### DECLARATION OF CHAD D. MOUNTAIN, ESQUIRE

Chad D. Mountain, Esquire declares as follows:

**I.    Removal Exhibits as to Owens-Illinois Kaylo**

1.     Attached as Exhibit 1 is a copy of Owens Illinois, Proposal to Purchase Equipment and Facilities for Increased Production of Microporite, November 13, 1942.

2.     Attached as Exhibit 2 is a copy of the Letter from A.E. MacGee, Bureau of Ships, Navy Department, to H.W. Paul, Owens-Illinois, September 30, 1943.

3.     Attached as Exhibit 3 is a copy of the Letter from H.W. Paul, Owens-Illinois, to A.E. MacGee, Bureau of Ships, Navy Department, October 4, 1943.

4.     Attached as Exhibit 4 is a copy of the Letter from Chief, Bureau of Ships, Navy Department, to H.W. Paul, Owens-Illinois, October 12, 1943.

5.     Attached as Exhibit 5 is a copy of the Memorandum from Chief, Bureau of Ships, Navy Department, to Director, United States Naval Engineering Experiment Station, Navy Department, October 12, 1943.

6.     Attached as Exhibit 6 is a copy of the Letter from H.W. Paul, Owens-Illinois, to A. Earnest MacGee, Bureau of Ships, Navy Department, October 19, 1943.

7.      Attached as Exhibit 7 is a copy of United States Naval Engineering Experiment Station, Navy Department, File No. NP16/L5/S39, Test C-383, January 3, 1944.

8.      Attached as Exhibit 8 is a copy of Bureau of Ships, Navy Department, Certificate of Approval, Serial No. EN28/L5/3982, January 1944.

9.      Attached as Exhibit 9 is a copy of the Letter from Chief of Bureau, Navy Department, to Owens-Illinois, January 12, 1944.

10.     Attached as Exhibit 10 is a copy of the Letter from H.W. Paul, Owens-Illinois, to A.E. MacGee, Bureau of Ships, Navy Department, February 2, 1944.

11.     Attached as Exhibit 11 is a copy of the Memorandum from Chief, Bureau of Ships, Navy Department, to War Production Board, February 7, 1944.

12.     Attached as Exhibit 12 is a copy of the Letter from A.E. MacGee, Navy Department, to Director, United States Naval Engineering Experiment Station, Navy Department, February 14, 1944.

13.     Attached as Exhibit 13 is a copy of the Letter from A.E. MacGee, Bureau of Ships, Navy Department, to Owens-Illinois, February 14, 1944.

14.     Attached as Exhibit 14 is a copy of the Letter from John K. Seldon, Owens-Illinois, to Director, United States Naval Engineering Experiment Station, Navy Department, March 18, 1944.

15.     Attached as Exhibit 15 is a copy of EES Form No. 18, Custody Receipt, United States Naval Engineering Experiment Station, Navy Department, March 21, 1944.

16.     Attached as Exhibit 16 is a copy of the Letter from John K. Seldon, Owens-Illinois, to Director, United States Naval Engineering Experiment Station, Navy Department, March 27, 1944.

2

17.     Attached as Exhibit 17 is a copy of EES Form No. 18, Custody Receipt, United States Naval Engineering Experiment Station, Navy Department, March 29, 1944.

18.     Attached as Exhibit 18 is a copy of United States Naval Engineering Experiment Station, Navy Department, File No. NP16/L5/S39, Test C-802, May 8, 1944.

19.     Attached as Exhibit 19 is a copy of Bureau of Ships, Navy Department, Certificate of Approval, Serial No. EN28/L5/4054, May 29, 1944.

20.     Attached as Exhibit 20 is a copy of the Letter from Chief of Bureau, Navy Department, to Owens-Illinois, May 29, 1944.

21.     Attached as Exhibit 21 is a copy of the Letter from G.H. Steed, Office of the Inspector of Naval Material, Navy Department, to Chief, Bureau of Ships, Navy Department, December 7, 1945.

22.     Attached as Exhibit 22 is a copy of the Letter from Chief, Bureau of Ships, Navy Department, to Resident Inspector of Naval Material, Navy Department, December 18, 1945.

23.     Attached as Exhibit 23 is a copy of the Letter from Chief of Bureau, Navy Department, to Owens-Illinois, January 2, 1946.

24.     Attached as Exhibit 24 is a copy of the Letter from H.W. Paul, Owens-Illinois, to Bureau of Ships, Navy Department, January 7, 1946 (encl. Bureau of Ships, Navy Department, Certificate of Approval EN28/L5/4054, May 29, 1944).

25.     Attached as Exhibit 25 is a copy of the ASONASD Form 882, Aviation Supply Office, Navy Department, May 16, 1946.

26.     Attached as Exhibit 26 is a copy of Navy Department, Office of the Inspector of Naval Material, March 22, 1948.

27.    Attached as Exhibit 27 is a copy of the Letter from Chief, Bureau of Ships, Navy Department, to H.W. Paul, Owens-Illinois, May 7, 1948.

28.    Attached as Exhibit 28 is a copy of the Letter from A.V. Baber, Owens-Illinois, to Experimental and Research Division, Bureau of Ships, Navy Department, May 11, 1948.

29.    Attached as Exhibit 29 is a copy of the Letter from Chief, Bureau of Ships, Navy Department, to A.V. Baber, Owens-Illinois, June 4, 1948.

30.    Attached as Exhibit 30 is a copy of the Invitation for Bids, Aviation Supply Office, Navy Department, 1948.

31.    Attached as Exhibit 31 is a copy of the Letter from H.E. Casey, Owens-Illinois, to Lt. J.W. Lipscomb, Aviation Supply Office, Navy Department, September 22, 1948.

32.    Attached as Exhibit 32 is a copy of the Memorandum from T.J. Emmett, General Stores Supply Officer, General Stores Supply Office, Navy Department, to Chief, Bureau of Ships, Navy Department, December 1, 1948.

33.    Attached as Exhibit 33 is a copy of the Memorandum from Chief, Bureau of Ships, Navy Department, to General Stores Supply Officer, General Stores Supply Office, Navy Department, December 21, 1948.

34.    Attached as Exhibit 34 is a copy of the Letter from Chief, Bureau of Ships, Navy Department, to E.C. Shuman, Owens-Illinois, February 8, 1949.

35.    Attached as Exhibit 35 is a copy of the Memorandum from Chief, Bureau of Ships, Navy Department, to Director, United States Naval Engineering Experiment Station, Navy Department, February 8, 1949.

36.    Attached as Exhibit 36 is a copy of the Wire from E.C. Shuman, Owens-Illinois, to Bureau of Ships, Navy Department, June 15, 1949.

37.     Attached as Exhibit 37 is a copy of the Memorandum from Chief, Bureau of Ships, Navy Department, to Director, United States Naval Engineering Experiment Station, Navy Department, June 22, 1949.

38.     Attached as Exhibit 38 is a copy of the Letter from Chief, Bureau of Ships, Navy Department, to E.C. Shuman, Owens-Illinois, June 22, 1949.

39.     Attached as Exhibit 39 is a copy of United States Naval Engineering Experiment Station, Navy Department, Test C-3905, Qualification Test of "Kaylo" Brand Thermal Block Insulation, July 12, 1949.

40.     Attached as Exhibit 40 is a copy of the Memorandum from Director, United States Naval Engineering Experiment Station, Navy Department, to Chief, Bureau of Ships, Navy Department, July 19, 1949.

41.     Attached as Exhibit 41 is a copy of the Letter from E.C. Shuman, Owens-Illinois, to Bureau of Ships, Navy Department, August 17, 1949.

42.     Attached as Exhibit 42 is a copy of the Letter from Chief, Bureau of Ships, Navy Department, to E.C. Shuman, Owens-Illinois, August 20, 1949 (encl. United States Naval Engineering Experiment Station, Navy Department, Test C-3905, Qualification Test of "Kaylo" Brand Thermal Block Insulation, July 12, 1949).

43.     Attached as Exhibit 43 is a copy of the Letter from Chief, Bureau of Ships, Navy Department, to E.C. Shuman, Owens-Illinois, September 12, 1949.

44.     Attached as Exhibit 44 is a copy of Owens-Illinois, Hydrous Calcium Silicates, Part V Physical and Chemical Properties of Kaylo Products, October 31, 1952.

45.     Attached as Exhibit 45 is a copy of Navy Department, Office of the Inspector of Naval Material, Report, February 9, 1953.

46.     Attached as Exhibit 46 is a copy of Navy Department, Office of the Inspector of Naval Material, Report, March 16, 1953.

47.     Attached as Exhibit 47 is a copy of the Letter from Everett Shuman, Owens-Illinois, to Chief, Bureau of Ships, Navy Department, May 12, 1954.

48.     Attached as Exhibit 48 is a copy of the Letter from Bruce Trumm, Owens-Illinois, to Chief, Bureau of Ships, Navy Department, October 6, 1954.

49.     Attached as Exhibit 49 is a copy of the Letter from Chief, Bureau of Ships, Navy Department, to Bruce Trumm, Owens-Illinois, October 19, 1954.

50.     Attached as Exhibit 50 is a copy the Memorandum from Chief, Bureau of Ships, Navy Department, to Director, United States Naval Engineering Experiment Station, Navy Department, October 19, 1954.

51.     Attached as Exhibit 51 is a copy of the Letter from Bruce Trumm, Owens-Illinois, to A.B. Kincaid, Owens Corning Fiberglas Corporation, March 10, 1955.

52.     Attached as Exhibit 52 is a copy of Owens-Illinois, Chemical and Physical Properties of Commercial Thermal Insulation, Project 83.1, Properties of Kaylo Thermal Insulation and Competitive Materials, March 25, 1955.

53.     Attached as Exhibit 53 is a copy of the Letter from Bruce Trumm, Owens-Illinois, to Bureau of Ships, Navy Department, July 1, 1955.

54.     Attached as Exhibit 54 is a copy of the Letter from R.C. Adams, Superintendent, Chemical Engineering Lab, United States Naval Engineering Experiment Station, Navy Department, to E.C. Shuman, Owens-Illinois, June 4, 1956.

55.     Attached as Exhibit 55 is a copy of Owens Illinois, Progress Report, General Research Division, First Quarter, 1957, April 5, 1957.

56.     Attached as Exhibit 56 is a copy of the Letter from Everett Shuman, Owens-Illinois, to Chief, Bureau of Ships, Navy Department, January 13, 1958.

57.     Attached as Exhibit 57 is a copy of the Agreement between Owens-Illinois and Owens Corning Fiberglas Corporation, April 30, 1958.

58.     Attached as Exhibit 58 is a copy of the Letter from C.C. Ross, United States Navy, to Owens-Illinois.

59.     Attached as Exhibit 59 is a copy of the Deposition of Willis Hazard, February 11, 1981.

60.     Attached as Exhibit 60 is a copy of the Response to Interrogatories Labeled To Be Answered in Connection with and Prior to Deposition of Everett Shuman.

## II.     Removal Exhibits as to United States Navy Specifications

61.     Attached as Exhibit 61 is a copy of Navy Department, Specification MIL-I-2819-F - 32-I-3(INT), Insulation, Thermal, Block.

62.     Attached as Exhibit 62 is a copy of Navy Department, Specification, MIL-I-2781-E - 32P8(INT), Pipe-Covering, Thermal-Insulation.

63.     Attached as Exhibit 63 is a copy of Navy Department, Qualified Products List, QPL-2819-41 – QPL-2819, Insulation, Thermal, Block.

64.     Attached as Exhibit 64 is a copy of Navy Department, Qualified Products List, QPL-2781-41 – QPL-2781, Insulation, Thermal, Pipe Covering.

65.     Attached as Exhibit 65 is a copy of Navy Department, Instructions Relative to Heat Insulation, Chapter 13, May 1939.

66.     Attached as Exhibit 66 is a copy of Navy Department, Bureau of Ships Manual, Chapter 39, Thermal Insulation, August 1946.

67.     Attached as Exhibit 67 is a copy of Navy Department, Bureau of Ships Manual, Chapter 39, Thermal Insulation, 1960.

68.     Attached as Exhibit 68 is a copy of Department of Defense, Military Standard Marking of Shipments, MIL-STD-129 – MIL-STD-129H.

69.     Attached as Exhibit 69 is a copy of Navy Shipment Marking Handbook, Navy Department, Second Edition, May 1943.

70.     Attached as Exhibit 70 is a copy of Navy Department, SECNAV Instruction, Uniform Labeling Program, September 24, 1956.

71.     Attached as Exhibit 71 is a copy of Warning Labels: A Guide for the Preparation of Warning Labels for Hazardous Chemicals, Manual L-1, Manufacturing Chemists Association, 1949.

72.     Attached as Exhibit 72 is a copy of Warning Labels: A Guide for the Preparation of Warning Labels for Hazardous Chemicals, Manual L-1, Manufacturing Chemists Association, 1953.

73.     Attached as Exhibit 73 is a copy of Warning Labels: A Guide for the Preparation of Warning Labels for Hazardous Chemicals, Manual L-1, Manufacturing Chemists Association, 1956.

74.     Attached as Exhibit 74 is a copy of the Memorandum from Chief, Bureau of Medicine and Surgery, Navy Department, January 15, 1960 (encl. Occupational Health Hazards Release No. 22, July 1959 – January 1959).

75.     Attached as Exhibit 75 is a copy of Navy Department, Interim Report on Study to Eliminate Asbestos from Use in the Shipyard on Navy Contracts, June 19, 1970.

76.     Attached as Exhibit 76 is a copy of the Letter from Deputy Chief of Naval Operations, Navy Department, to Assistant Director, United States General Accounting Office, February 8, 1979.

**III.    Removal Exhibits as to United States Navy Knowledge**

77.     Attached as Exhibit 77 is a copy of Instruction to Medical Officers, Naval Medical Bulletin, Navy Department, 1922.

78.     Attached as Exhibit 78 is a copy of Navy Department, Occupation Hazards and Diagnostic Signs: A Guide to Impairments to be Looked for in Hazardous Occupations, United States Naval Medical Bulletin, November 1922.

79.     Attached as Exhibit 79 is a copy of Public Health Bulletin No. 241, United States Public Health Service, August 1938.

80.     Attached as Exhibit 80 is a copy of Annual Report of the Surgeon General of the United States Navy, Navy Department, 1939.

81.     Attached as Exhibit 81 is a copy of His mask keeps him on the job, United States. Public Health Service, 1942.

82.     Attached as Exhibit 82 is a copy of Navy Department and Maritime Commission, Minimum Requirements for Safety and Industrial Health in Contract Shipyards, January 20, 1943.

83.     Attached as Exhibit 83 is a copy of the Memorandum from Earl Mills, Acting Chief, Bureau of Ships, Navy Department, to All Supervisors of Shipbuilding, Navy Department, November 19, 1943.

84.     Attached as Exhibit 84 is a copy of the Letter from C.D. Wheelock, Chief, Bureau of Ships, Navy Department, to Philip Drinker, United States Maritime Commission, January 25, 1944.

85.     Attached as Exhibit 85 is a copy of United States Navy, Puget Sound Navy Yard, How to Work for X56 and Live, 1944.

86.     Attached as Exhibit 86 is a copy of United States Navy, Mare Island Navy Yard, Safety Rules, September 1, 1944.

87.     Attached as Exhibit 87 is a copy of the Letter from Philip Drinker, Chief Health Consultant to the Division of Shipyard Labor Relations, to Captain Thomas J. Carter, Navy Bureau of Medicine and Surgery, Navy Department, January 31, 1945.

88.     Attached as Exhibit 88 is a copy of A Health Survey of Pipe Covering Operations in Constructing Naval Vessels, Journal of Industrial Hygiene and Toxicology 28, January 1946.

89.     Attached as Exhibit 89 is a copy of Navy Department, Safety Review, Vol. 4, No. 1, January 1947.

90.     Attached as Exhibit 90 is a copy of Puget Sound Naval Shipyard, Navy Department, General Safety Rules Manual, 1950.

91.     Attached as Exhibit 91 is a copy of United States Department of Labor, Safety and Health Standards for Contractors Performing Federal Supply Contracts under the Walsh-Healey Public Contracts Act, 1952.

92.     Attached as Exhibit 92 is a copy of Effect of Inhaled Commercial Hydrous Calcium Silicate Dust on Animal Tissues, A.M.A. Archives of Industrial Health, Vol. 12, No. 3, September 1955.

93.     Attached as Exhibit 93 is a copy of Navy Department, BUMED Instruction 6270.3, November 7, 1955.

94.     Attached as Exhibit 94 is a copy of Wear Your Respirator, Safety Superintendent, Long Beach Naval Shipyard, Navy Department, and Business Agent, Local No. 20, April 1957.

95.     Attached as Exhibit 95 is a copy of Minutes of Pipe and Copper Shop Master Mechanics Conference, Boston Naval Shipyard, May 8-10, 1957.

96.     Attached as Exhibit 96 is a copy of U.S. Navy Medicine, Vol. 69, No. 6, June 1978.

97.     Attached as Exhibit 97 is a copy of Government and Navy knowledge regarding health hazards of asbestos: a state of the science evaluation (1900 to 1970), Inhalation Toxicology, December 2011.

98.     Attached as Exhibit 98 is a copy of Philadelphia Court of Common Pleas Complaint filed in Tullio v. A.W. Chesterton, Inc., No. 1805-2400.

I declare under penalty of law that the foregoing is true and correct.  Executed on June 25, 2018.

**MARON MARVEL BRADLEY
ANDERSON & TARDY, LLC**

By: _____

Chad D. Mountain, Esquire

## CERTIFICATE OF SERVICE

The undersigned attorney certifies on June 25, 2018 that copies of these papers were served under Federal Rule of Civil Procedure 5 by electronic means to all counsel of record.


MARON MARVEL BRADLEY
ANDERSON & TARDY, LLC

By: _____

Chad D. Mountain, Esquire


16